## CORSER v. PAUL.

A cashier of a bank has power, *prima facie*, to indorse for collection notes discounted, and notes deposited to be collected, or deposited as collateral security.

It is sufficient evidence of a ratification by the bank of the cashier's indorsement, that the bank prosecutes the suit in the name of the indorsee.

A conversation between the principal signer of a note and a supposed surety who denied his signature, after the latter had seen the note, in the absence of any person interested for the holder, was *held* incompetent to affect the latter.

The silence of a party, to whom a note, purported to be signed by him, was shown, with a request to pay it, is competent evidence that his signature is genuine; or, if not genuine, of his assent to be bound by it.

Such silence does not operate as an estoppel upon the party, to deny or disprove his signature, unless the holder has been led to change his position, or otherwise act upon it to his injury.

ASSUMPSIT, brought by Harvey F. Corser against Henry Paul, upon a joint promissory note, for $350, dated April 19, 1858, payable to the order of the Langdon Bank, in four months, and by said bank indorsed to the plaintiff, alleged to have been made by John H. Paul, Henry Paul and Charles T. Paul. The note was specially declared upon, and the indorsement set forth. The suit was prosecuted in the name of the plaintiff by said bank.

Upon the general issue, with a denial of the defendant's signature, the plaintiff introduced evidence tending to show the genuineness of the defendant's signature, and read the note and indorsement in evidence. The indorsement was by the cashier of the Langdon Bank, thus: " C. Hale, Cashier." The defendant excepted to the sufficiency of the indorsement, denying that the cashier had authority to transfer notes ; but the court admitted the evidence.

It appeared that the note in suit was discounted by the Langdon Bank, at Dover, at the request of John H. Paul, upon a previous application for a loan for its amount, and a proposition by him to furnish, in addition to his own,

the names of the two other signers, who were his younger brothers, to secure its repayment. After the directors of the bank had voted the discount, John H. Paul furnished the notes with his brothers' names thereto, agreeably to his proposals.

The questions submitted to the jury were, whether the defendant signed the note, or authorized it to be signed with his name, or ratified and confirmed it after it had been signed.

The defendant testified that he never signed the note, or authorized it to be signed. Charles T. Paul and four other witnesses, who had seen the defendant write, and were more or less acquainted with his hand-writing, testified that they thought the name upon the note was not his signature ; and said Charles T. was permitted, against the plaintiff's objection, to testify that he never signed it, or authorized it to be signed. Other evidence was introduced by the plaintiff, tending to show the signature genuine.

It appeared that the defendant had signed several notes for his brother, John H. Paul, who died November 12, 1858, leaving a widow and children.

On the 27th of October, 1858, the cashier of the Langdon Bank addressed a notice to the defendant, requesting payment of the note, describing it as signed by himself and his two brothers ; stating its date, amount, and when payable. On the 10th of November, 1858, the defendant having received the notice from the post-office, called at the bank, asked to see the note, examined it, was told by the cashier that it had been long over due, and, unless paid immediately, he and his brother Charles would be compelled to pay it. The defendant did not then intimate that the note had not been signed by him, or that there was any thing wrong about it, but told the cashier he would see his brother John about it. Some time afterward he informed the cashier that he did not sign it.

The defendant then proposed to show that on going from the bank to his brother's (John H.,) house the same day after he had called and examined the note, he there denied that he ever signed the note, to John H.'s wife, his mother and sister, and that he showed to John H. the notice he had received from the cashier; and what John H. then said; but the court declined to receive the evidence.

The court instructed the jury that if they found, from all the evidence before them, that the defendant signed the note, or authorized it to be signed, or designedly ratified and confirmed it as his, after it had been signed, their verdict would be for the plaintiff, otherwise for the defendant.

In his argument to the jury the plaintiff's counsel had urged that the defendant's conduct, when he called at the bank, on the 10th of November, examined the note, and was requested to pay it, in not then repudiating it, but treating it as a valid note, was evidence that he then intended to ratify it, or had previously authorized John H. to sign it for him, and that he ought then to have disavowed it, or be afterward by law precluded from so doing.

After the close of the charge, the defendant's counsel passed to the court a written request, to instruct the jury that no legal consequences arose from the defendant's omission to denounce the note at the time it was shown to him, unless they found that by such omission the bank had been prejudiced. The court then instructed the jury, that if they found from the evidence that when the defendant was called upon by the bank to pay the note, and went to the bank and examined it, and did not disavow it, or intimate in any way that it was not genuine, he intended to assent to and ratify the note as his own, he would thereby ratify and confirm it; but if they found he had no such intention, they might regard the fact of his not then denying it, as of no force upon the question of ratification and authority.

The jury having returned a verdict for the plaintiff, the defendant moved for a new trial.

*W. Hamlin*, for the defendant.

*Wheeler & Hall*, for the plaintiff.

BELL, C. J.   The note was indorsed by " C. Hale, cashier." His authority was denied, and though proof of authority was not offered, beyond the fact that he was cashier, the evidence was admitted.

*Story*, in his work on Agency, 103, sec. 114, says : " The officers of a bank are held out to the public as having authority to act according to the general usage, practice and course of business of said institutions. The cashier of a bank is usually intrusted with all the funds of the bank in cash, notes, bills, and other choses in action, to be used from time to time, for the ordinary and extraordinary exigencies of the bank. He is accustomed to receive directly, or through the subordinate officers, all moneys and notes of the bank; to deliver up all discounted notes, and other securities and property, when payment for the dues for which they have been given has been made, and to draw checks for money, wherever the bank has deposits or pecuniary funds. In short, he is considered the executive officer, through whom and by whom the whole moneyed transactions of the bank, in paying or receiving debts, and discharging or transfering securities, are to be conducted. It does not seem, therefore, too much to infer, in the absence of all positive and known restrictions, that he possesses the incidental authority, and indeed that it is his duty, to apply the negotiable funds, as well as the moneyed capital of the bank, to discharge its debts and obligations. Hence it seems to be a natural conclusion, that *primâ facie* the cashier of a bank possesses the incidental authority to indorse the negotiable securi-

ties held by the bank, to supply the wants and to promote the interests of the bank; and any restrictions on such authority must be established by competent proofs, and will not be presumed to exist." *Wild* v. *Bank*, 3 Mason 505.

The same doctrine abridged in form, is stated in 1 Bouv. Law Dict., Art. "Cashier;" in Dunlap's Paley's Agency 156, n. 1, and Ang. & Am. on Corp. 296, recognized in *Lloyd* v. *W. B. Bank*, 3 Har. 172; *Fay* v. *Noble*, 2 Cush. 1; *Kimball* v. *Cleaveland*, 4 Mich. 606.

In *Elliot* v. *Abbott*, 12 N. H. 549, the case in 3 Mason 504, is cited, and the cases distinguished. It was there held that the cashier of a bank, for the purpose of collection, may indorse notes belonging to the bank, and those lodged there for collection, or as collateral security; and we think that the rule is there well stated. So far as we are aware, these are the only occasions on which, by the general usage, practice and course of business of those institutions, their cashiers are accustomed to indorse negotiable paper; and it does not occur to us that there is occasion for those officers to transfer the securities held by the bank on any other occasion. By special authority, a cashier may indorse on other occasions, but without such express authority he cannot indorse a note made payable to a bank, and discounted not by the bank, but by another person, as was held in *Elliot* v. *Abbott*, before cited. By an express vote of the directors, his indorsement of such a note would be valid. *Cross* v. *Young*, 22 N. H. 77.

The case finds that this indorsement was made for the purpose of collection; and the fact that the suit is brought and prosecuted by the bank in the name of the plaintiff, is a sufficient ratification of the indorsement, if any were needed.

Charles T. Paul, another supposed signer of this note, was permitted to testify that he did not sign or authorize it to be signed with his name. We think the evidence

Corser *v.* Paul.

was admissible upon the principle held in *Knight* v. *Heath*, 23 N. H. 410, that every paper offered in evidence, is, like a witness, liable to be scrutinized as to every circumstance connected with it, to see if it is entitled to the credit it claims.

The occurrences which took place at the bank were properly submitted to the jury as matter of evidence. No principle is better settled than that a man's silence upon an occasion where he is at liberty to speak, and the circumstances naturally call upon him to do so, may be properly considered by the jury, as tacit admissions of the statements made in his presence, or of the claims then made upon him. The rule and its qualifications are well stated in 2 Gr. Ev. 230, 232, secs. 197, 198. Admissions may be implied from the acquiescence of the party; but where it is acquiescence in the conduct or language of others, it must appear that such conduct was fully known, or the language fully understood by the party, before any inference can be drawn from his passiveness, or silence. The circumstances must not only be such as afforded an opportunity to act, or speak, but properly and naturally called for some action, or reply, from men similarly situated. This kind of evidence should always be received with caution, and never, unless the evidence is of direct declarations of that kind which naturally called for contradiction, or some assertion made to the party or others with respect to his right, which by his silence he acquiesces in. But the silence of the party, even where the declarations are addressed to himself, is worth very little, as evidence, unless where he had the means of knowing the truth or falsehood of the statement. See *Phelps* v. *Gilchrist*, 28 N. H. 278; *Molineaux* v. *Eastman*, 14 N. H. 507; 1 C. & H. Phill. Ev. 358; *Cane* v. *Call*, 21 Pick. 522; *Hessey* v. *Barton*, 23 Vt. 685; *Brainard* v. *Buck*, 25 Vt. 579; *B. & W. R. R.* v. *Dana*, 1 Gray 104.

The facts in evidence here bring the case fairly within

the rule. The note and claim of the bank against him was brought to his notice by the letter of the cashier. He called at the bank and asked to see it, and was told, if not paid immediately, he would be compelled to pay it. He must have understood the matter fully, and he had opportunity to deny his signature, if it was not true. It was an occasion which called upon him to deny his liability, and to denounce it as a forgery, if he did not sign it; but he did not intimate that the note was not signed by him, or that there was any thing wrong about it. These facts were evidence of a tacit admission that the note was, as the bank claimed it to be, a genuine note, signed by him, and which he was consequently liable and bound to pay, or a note which he did not choose to deny that he had signed, and which he preferred to pay rather than do so. *Humphreys* v. *Guillow*, 13 N. H. 385. The evidence was, therefore, properly received. The charge of the court, therefore, upon this point was correct. If the defendant intended to assent to the note, to waive any objections to it, not to avail himself of the want of genuineness, that would ratify and confirm the note; and though he changed his mind afterward, he would be bound; but if he had no such intention, the evidence would be immaterial.

If any objection would lie against this part of the charge, it would be that it had too exclusive reference to the defendant's intention to ratify and affirm the note where the jury might have regarded a mere intention on his part not to object to the note—not to denounce it as a forgery—but rather to pay it than cast a stigma upon his brother, or an intention to say nothing against the note, until he had ascertained whether his brother could not pay it, as quite a sufficient affirmance of the note, though he had no intention to affirm it; but the defendant cannot take this objection, because its only fault is that it is too favorable to him.

It seems to have been contended by the counsel for the plaintiff, that if the defendant, when he called at the bank, and examined the note, and was requested to pay it, did not disavow it, he would be afterwards precluded by law from denying it; and on the other hand, the defendant's counsel contended that no legal consequences or influence arose from the defendant's omission to denounce the note, unless the jury found that by such omission the bank had been prejudiced.

Neither of these points are well taken. There is a class of admissions which may be either express or implied from silence, or acquiescence, which are conclusive. Such are admissions which have been acted upon, or those which have been made to influence the conduct of others, or to derive some advantage to the party, and which, therefore, cannot be denied without a breach of good faith. 1 Gr. Ev. 33, sec. 27. As if, for example, in the present case, the defendant had stood by and seen this note offered to the bank for discount; and, being aware of what was doing, had been silent; or if, before the discount he had been spoken to by any of the officers of the bank in relation to the note, and, being aware of the facts, had foreborne to deny the signature—by these tacit admissions he would be forever concluded to deny the note to be his, in case the bank discounted it. This is but an application of the same principle that is applied in the case of deeds of real estate, that he who stands by, at the sale of his property by another person, without objecting, will be precluded from contesting the purchaser's title; *Wells* v. *Pierce*, 27 N. H. 503; much more if he actively encourages the purchase. *Parker* v. *Brown*, 15 N. H. 184.

Upon the same principle, if the defendant here, knowing the true condition of the case, had, by his silence, prevented the bank from taking measures which they were proposing to adopt at once to secure themselves on the property of John H., from a doubt of the genuine-

ness of the defendant's signature, he would be bound by his silence, and would be estopped to deny his signature. But, in such a case, it would be a complete answer to a claim that a party was thus concluded, to show that the adverse party had not acted upon such an admission, and were not thus prejudiced by such silence; as, for instance, if it could be shown that they were perfectly aware of the truth, and were not misled.

But neither of these principles were · applicable in this case. There is no pretence of evidence that the bank were in any respect induced to change their position by any thing that occurred when the defendant called at the bank; nor is there room for a suggestion that the bank were aware of the actual condition of the note, until afterward.

The evidence as to what was said by Henry Paul, at J. H. Paul's house, after seeing the note, was clearly inadmissible. He could not make evidence for himself by his own mere declarations.

The statements of J. H. Paul were mere hearsay. They accompanied and gave character to no other transaction material to the cause, and of which evidence would be admissible before the jury. *Carlton* v. *Patterson*, 29 N. H. 580.

*Judgment on the verdict.*